# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

KEIGELYAN HERNANDEZ, as
Personal Representative of the Estate
of Jose Angel Hernandez, deceased,

        Plaintiff,

v.                                                     Case No:   6:23-cv-2402-GAP-UAM

HELIDOSA AVIATION GROUP, S.A.,

        Defendant

_____

## ORDER

This cause came before the Court for consideration without oral argument on Defendant Helidosa Aviation Group, S.A.'s ("Helidosa") Motion to Dismiss Plaintiff's Amended Complaint for Lack of Personal Jurisdiction or, Alternatively, *Forum Non Conveniens* (Doc. 55). The Court has also considered the Response in Opposition (Doc. 73) filed by Plaintiff Keigelyan Hernandez ("Plaintiff"), in her capacity as personal representative of the estate of Jose Angel Hernandez ("Mr. Hernandez"). Additionally, the Court has considered Helidosa's Reply (Doc. 77). For the reasons set forth below, the Motion will be denied.[1]

---

[1] The Court acknowledges that Plaintiff requested oral argument on this Motion. *See* Doc. 74. After reviewing the parties' filings, however, the Court determined that oral argument

I.      **Overview**

A.      **Summary of the Facts**

In this tragic case, Plaintiff sues Helidosa—an aircraft charterer and air ambulance operator—under the Montreal Convention, in relation to an airplane crash that caused Mr. Hernandez's death. *See* Doc. 45; *see also* Doc. 55-1.

Plaintiff is Mr. Hernandez's daughter. *See* Doc. 45, ¶ 4. She alleges that Mr. Hernandez was a successful music producer and artist, who was commonly known as "Flow la Movie" in the music industry. *See id.*, ¶ 1. At the time of his death, Mr. Hernandez was a Florida resident. *Id.*, ¶ 2; Doc. 55-1, ¶ 30.

In December of 2021, Mr. Hernandez arranged, through Helidosa, round-trip air charter services from Orlando, Florida to the Dominican Republic for himself and five members of his family. *See* Doc. 45, ¶¶ 31, 41; Doc. 55-1, ¶¶ 31-32. Helidosa scheduled a Gulfstream IV aircraft (specifically, HI-1050) for the return flight to Orlando. *See* Doc. 45, ¶ 33; Doc. 73-16 at 30-31. When the plane arrived in the Dominican Republic (from Puerto Rico), the flight crew reported an issue with the aircraft's ground spoilers. Doc. 45, ¶¶ 33-34; Doc. 73-16 at 22-25. As a result, Helidosa's mechanics replaced the ground spoiler actuators on the right wing, then towed the aircraft back to the apron for the flight to Florida. Doc. 45, ¶ 35; Doc. 55-1,

_____

was unnecessary.

¶¶ 27-28, 38-39; Doc. 73-16 at 26-29. The mechanics, however, improperly installed the replacement spoiler actuators, which caused the right-wing ground spoilers to malfunction.[2] Doc. 45, ¶ 38; Doc. 73-16 at 19-22, 65-67, 122-124.

After Mr. Hernandez and his family boarded the plane, the flight crew performed a preflight control check, in which the crew extended the ground spoilers on both wings. Doc. 45, ¶ 36; Doc. 73-16 at 74-76. The ground spoilers on the right wing extended, but failed to retract, and the aircraft taxied for departure with the right-wing ground spoilers still extended. Doc. 45, ¶ 36; Doc. 73-16 at 72-76, 109.

Following takeoff, the aircraft immediately experienced control problems, due to the defective right-wing ground spoilers. Doc. 45, ¶¶ 37, 39; *see* Doc. 73-16 at 95. The control problems caused the flight crew to attempt an emergency landing at another airport in the Dominican Republic. Doc. 45, ¶¶ 39-40; Doc. 55-1, ¶ 4. During the emergency landing attempt, the aircraft struck the ground, which resulted in its destruction and the deaths of all onboard—two pilots, a flight attendant, Mr. Hernandez, and five members of his family. Doc. 45, ¶ 41; Doc. 55-1, ¶¶ 6, 29.

---

[2] Helidosa's CEO conceded this point during one of his depositions. *See* Doc. 73-16 at 19-22, 65-67, 122-124.

**B.      Summary of this Action**

Plaintiff asserts a single claim under the Montreal Convention in this action.[3] *See* Doc. 45. Helidosa, a Dominican company, now seeks dismissal of that claim for lack of personal jurisdiction, or, alternatively, *forum non conveniens. See* Doc. 55. It primarily argues that Plaintiff's claim lacks ties to Florida and should instead be prosecuted in the Dominican Republic. *See id.*

**II.      Personal Jurisdiction**

**A.      Background**

**1.      Plaintiff's Allegations**

In her Amended Complaint, Plaintiff asserts that this Court has personal jurisdiction over Helidosa pursuant to §§ 48.193(1)(a)(1), 48.193(1)(a)(6)(a), and 48.193(2) of Florida's Long-Arm Statute and the Due Process Clause of the Fourteenth Amendment to the United States Constitution (the "Due Process Clause"). *See* Doc. 45, ¶ 25.

---

[3] The Montreal Convention "provides the exclusive cause of action to passengers who suffer 'bodily injury' caused by an 'accident' during 'international carriage by air,' within the meaning of Articles 1 and 17 of the Convention." *Jacob v. Korean Air Lines Co.*, 606 F. App'x 478, 480 (11th Cir. 2015). This treaty is more formally known as the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, T.I.A.S. No. 13038.

The United States and the Dominican Republic are parties to this treaty and optional venues under Article 33.

Regarding Helidosa's connections to Florida, Plaintiff asserts that Helidosa operates approximately three flights a day to and from twenty-three Florida destinations, accounting for twenty-six percent of Helidosa's worldwide flights and generating thirty percent of its revenue. *Id.*, ¶¶ 11-15. She alleges that "Helidosa's contacts with Florida, *i.e.*, its offers of charter flight services to and from the state, are related to [her] cause of action because it is precisely one of those charter flights to Florida" that caused Mr. Hernandez's death. *Id.*, ¶ 26.[4]

### 2.    Helidosa's Motion to Dismiss

Helidosa, on the other hand, contends that Florida's Long-Arm Statute does not provide a sufficient basis for personal jurisdiction and that exercising jurisdiction over it would violate the Due Process Clause. *See* Doc. 55 at 16-36. Relying on a declaration authored by its CEO, Gonzalo A. Castillo Lopez ("Mr. Castillo"), Helidosa argues that this Court lacks personal jurisdiction over it because it: "(1) has never been registered to conduct business in Florida, (2) has no agents or employees in Florida, (3) has no offices in Florida, (4) owns no property in Florida, (5) has no bank accounts in Florida, (6) has no listed business address in Florida, (7) has never paid taxes in Florida, and (8) has never advertised, solicited

---

[4] Plaintiff also includes a screenshot of Helidosa's Facebook page, which lists a phone number with a Miami area code. Doc. 45, ¶ 20.

or marketed its services in Florida or in any other State within the United States." *Id.* at 12 (citing Doc. 55-1, ¶¶ 14-17).

### 3. Plaintiff's Response

After Helidosa filed the instant Motion, the Court granted Plaintiff leave to conduct jurisdictional discovery. *See* Doc. 62. As a result, Plaintiff supplements her initial jurisdictional allegations in her Response. *See* Doc. 73 at 2-7.

Plaintiff adds that Mr. Hernandez began his business relationship with Helidosa sixteen months prior to his death, and she submitted a declaration stating that he "knew of Helidosa because [of its] Florida market presence and because it provided charter services in our area and for other music industry professionals in the U.S."[5] *See id.* at 3; Doc. 73-1, ¶ 6, Doc. 73-3 (first text message dated August 24, 2020). She also asserts that Mr. Hernandez used Helidosa's charter flight services approximately seventeen times, including for twelve trips that involved Florida airports, and she claims that he paid Helidosa more than $200,000 for these flights. *See* Doc. 73 at 3 (citing WhatsApp Messages in Doc. 73-3); Doc. 73-1, ¶ 7.[6]

_____

[5] Plaintiff's use of "our area" presumably refers to Florida. *See* Doc. 45, ¶¶ 2, 4 ("[Keigelyan] Hernandez is a resident of Osceola County, Florida.").

[6] Plaintiff included reams of WhatsApp messages between Mr. Hernandez and a Helidosa representative with her Response, but she failed to provide a translation of the conversation, which occurred in Spanish. Doc. 73-3. Based on the posture of this case, the Court will accept Plaintiff's statements regarding this conversation for present purposes. *See* Doc. 77; *see also infra* Sections II.A.4, II.B. However, the parties are directed to provide joint translations of their future exhibits as needed.

In addition to her declaration, Plaintiff also submitted Mr. Castillo's deposition testimony. *See* Docs. 73-4, 73-16. During his first deposition, Mr. Castillo explained that Helidosa began offering flights to and from Florida in 2011, with the United States Department of Transportation's authorization. *See* Doc. 73-4 at 11-13. He stated that each of Helidosa's fourteen planes travel to Florida once or twice a year for maintenance (amounting to twenty-eight trips at most) and that approximately one quarter of Helidosa's pilots' bi-annual training occurs in Florida. *Id.* at 29-35, 71. He also testified that, in addition to its direct customers (like Mr. Hernandez), Helidosa acquires indirect customers through (1) an online bidding platform operated by two Florida-based companies (Avinode, Inc. and SchedAero, Inc.) and (2) a network of brokers, a majority of whom have an office in Florida. *See id.* at 49-50, 53-54, 68-70; Docs. 73-9, 73-10.

Indeed, Mr. Castillo agreed that Florida is Helidosa's most important state, as more than half of Helidosa's United States revenue comes from Florida—amounting to, on average, $15.8 million annually. *See* Doc. 73-4 at 21-22; Doc. 73-6.

Based on these factual allegations, Plaintiff contends that Helidosa is subject to personal jurisdiction in Florida. *See* Doc. 73 at 2.

### 4.    Helidosa's Reply

Although Helidosa recognized that Plaintiff's Response includes new factual allegations, it does not contest her statement of the facts in its Reply. *See* Doc. 75

at 1; Doc. 77. Rather, Helidosa's Reply only counters Plaintiff's legal arguments. *See* Doc. 77.

**B.    Legal Standard**

To determine whether it has personal jurisdiction over a nonresident defendant, the court must engage in a two-step inquiry. First, the court considers whether there is a basis for jurisdiction under Florida's Long-Arm Statute. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). Second, the court decides whether "sufficient minimum contacts exist to satisfy the Due Process Clause . . . so that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (citations and internal quotation marks omitted).

The plaintiff bears the initial burden of alleging enough facts in her complaint to establish a prima facie case of personal jurisdiction. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). A defendant may then challenge personal jurisdiction in a Federal Rule of Civil Procedure ("Rule") 12(b)(2) motion to dismiss and submit "affidavit evidence in support of its position." *N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*, No. 23-10126, _ F.4th _, 2025 WL 16775, at *7 (11th Cir. Jan. 2, 2025) (citation and internal quotation marks omitted). When that occurs, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* (citation and internal quotation marks omitted).

In ruling on a Rule 12(b)(2) motion to dismiss, a court may either: "(1) hold an evidentiary hearing before trial to make factual findings about personal jurisdiction or (2) decide the motion to dismiss under a prima facie standard without an evidentiary hearing." *Id.* (citation and internal quotation marks omitted). If the court applies the prima facie standard, it may neither weigh evidence nor make credibility determinations; instead, it "must construe all reasonable factual inferences in favor of the plaintiff to the extent that the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits." *Id.* (citation and internal quotation marks omitted).

The Court will decide the instant Motion under the prima facie standard without an evidentiary hearing.

### C.    Analysis

#### 1.    Florida's Long-Arm Statute

Florida's Long-Arm Statute sets forth both general and specific personal jurisdiction. *See* Fla. Stat. §§ 48.193(1)–(2).[7] A defendant subjects itself to general personal jurisdiction under Florida's Long-Arm Statute when it engages "in substantial and not isolated activity within this state . . . whether or not the

---

[7] Because the reach of Florida's Long-Arm Statute is a question of Florida law, the Court must apply the statute as would the Florida Supreme Court and follow the interpretations offered by Florida's District Courts of Appeal (unless there is reason to think that the Florida Supreme Court would hold otherwise). *Id.* Florida's Long-Arm Statute "is to be strictly construed." *Id.* (citation and internal quotation marks omitted).

[plaintiff's] claim arises from that activity." Fla. Stat. § 48.193(2). "General personal jurisdiction is based on a defendant's substantial activity in Florida without regard to where the cause of action arose." *Louis Vuitton*, 736 F.3d at 1352 (applying Florida law). "On the other hand, specific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida." *Id.*; *see* Fla. Stat. § 48.193(1). Specific personal jurisdiction concerns a defendant's contacts with Florida only to the extent that they relate to the plaintiff's claim. *Louis Vuitton*, 736 F.3d at 1352.

Here, Plaintiff argues that Helidosa subjected itself to both general and specific personal jurisdiction. First, Plaintiff alleges general personal jurisdiction under Fla. Stat. § 48.193(2), based on Helidosa's substantial activity in Florida. Second, Plaintiff alleges specific personal jurisdiction: (1) under Fla. Stat. § 48.193(1)(a)(1), in light of Helidosa's business in the state, and (2) under Fla. Stat. § 48.193(1)(a)(6)(a), due to Helidosa's tortious conduct.

The Court's analysis begins and ends with Fla. Stat. § 48.193(1)(a)(1), which provides that a nonresident submits itself to jurisdiction in Florida "for any cause of action arising from . . . [o]perating, conducting, engaging in, or carrying on a business or business venture in this state." *Id.* In its Reply, Helidosa concedes that it "conducts business in Florida."[8] Doc. 77 at 4. Therefore, the only issue before the

---

[8] To establish that a nonresident was carrying on a business venture in Florida, the

Court is whether Plaintiff's Montreal Convention claim arises from Helidosa's business venture.

Specific personal jurisdiction under Florida's Long-Arm Statute requires "connexity," *i.e.*, "a direct affiliation, nexus, or substantial connection" between the defendant's business activity and the plaintiff's claim. *Citicorp Ins. Brokers (Marine), Ltd. v. Charman,* 635 So. 2d 79, 82 (Fla. 1st DCA 1994) (citation and internal quotation marks omitted); *accord Doe (V.H.) v. Hyatt Hotels Corp.*, No. 23-13503, 2024 WL 3859882, at *1 (11th Cir. Aug. 19, 2024). In its Motion and Reply, Helidosa argues that Plaintiff has failed to establish a causal connection between her Montreal Convention claim and its activities in Florida. *See* Doc. 55 at 24-25; Doc. 77 at 3-5. Helidosa, however, reads Fla. Stat. § 48.193(1)(a)(1)'s connexity requirement too narrowly.

Helidosa is in the charter aircraft services (and air ambulance) business. It admits that it conducts this business in Florida — in fact, it flies to Florida about three times each day. Mr. Hernandez knew of Helidosa because of its Florida market

---

nonresident's activities "must be considered collectively and show a general course of business activity in the State for pecuniary benefit." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996) (citation and internal quotation marks omitted) (applying Florida law). Indeed, Mr. Hernandez's transactions alone likely satisfy this standard, considering that he booked seventeen charter flights over a period of sixteen months — including twelve which required Helidosa to fly to or from Florida — and paid Helidosa more than $200,000. *Cf. id.* at 628 (concluding that sporadic marketing efforts, which generated "three to five transactions grossing an estimated $3,000," qualified "as a general course of business activity in Florida for pecuniary benefit").

presence and because it provides charter flight services in Florida (indeed, he used Helidosa's charter flight services to fly to or from Florida twelve times). The crash that killed him occurred during his final flight bound for Orlando.

These facts establish that there is a direct affiliation between Helidosa's business activity in Florida and Plaintiff's Montreal Convention claim.[9] *See Nw. Aircraft Cap. Corp. v. Stewart*, 842 So. 2d 190, 194 (Fla. 5th DCA 2003) (finding that connexity existed under Fla. Stat. 48.193(1)(f) where estates brought wrongful death action against two charter flight operators after a plane crash killed the decedents); *see also Saade v. Insel Air*, No. 17-22003-CIV-WILLIAMS, 2019 WL 2106104, at *5 (S.D. Fla. Mar. 6, 2019) (finding that connexity existed under Fla. Stat. § 48.193(1)(a)(1) where the plaintiff brought suit against a commercial airline regarding an exit fee he was required to pay before boarding a flight in Miami). Thus, Helidosa subjected itself to specific personal jurisdiction in Florida pursuant to § 48.193(1)(a)(1) of Florida's Long-Arm Statute.

### 2. The Due Process Clause

Having concluded that the reach of Florida's Long-Arm Statute extends to Helidosa, the Court must now consider whether the Due Process Clause supports

---

[9] Helidosa primarily relies on an unpublished Eleventh Circuit opinion, *Hinkle v. Cirrus Design Corp*. 775 F. App'x 545 (11th Cir. 2019), in arguing that there is no connexity here. However, *Hinkle* is readily distinguishable because, in that case, the plaintiff sued the *manufacturer* of his own airplane, which he purchased through a Virginia representative and picked up in Minnesota. *Id.*

the exercise of specific personal jurisdiction here. *See SkyHop Techs., Inc. v. Narra*, 58

F.4th 1211, 1228 (11th Cir. 2023). To answer this question, the court applies a three-

part test, which examines:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one
> of the defendant's contacts with the forum;
>
> (2) whether the nonresident defendant "purposefully availed" [itself]
> of the privilege of conducting activities within the forum state, thus
> invoking the benefit of the forum state's laws; and
>
> (3) whether the exercise of personal jurisdiction comports with
> "traditional notions of fair play and substantial justice."

*Louis Vuitton*, 736 F.3d at 1355 (collecting cases).

"The plaintiff bears the burden of establishing the first two prongs." *Id.* If the

plaintiff satisfies her burden, the defendant "must make a compelling case that the

exercise of jurisdiction would violate traditional notions of fair play and substantial

justice." *Id.* (citation and internal quotation marks omitted).

> (a)    *Plaintiff's Montreal Convention claim arises out of and relates
> to Helidosa's contacts with Florida.*

Whether Plaintiff's claim arises out of or relates to Helidosa's contacts with

Florida does not require direct causation. *Ford Motor Co. v. Mont. Eighth Jud. Dist.

Ct.*, 592 U.S. 351, 362 (2021); *SkyHop Techs.*, 58 F.4th at 1229. Instead, courts are

directed to "focus on the essential foundation of specific jurisdiction — whether

there is a strong relationship among the defendant, the forum, and the litigation."

*SkyHop Techs.*, 58 F.4th at 1229 (quoting *Ford Motor Co.*, 592 U.S. at 365) (internal quotation marks omitted).

As set forth above, Plaintiff has shown that there is a strong relationship between Helidosa, Florida, and Plaintiff's Montreal Convention claim.[10] *Supra* Section II.C.1, *see SkyHop Techs.*, 58 F.4th at 1229; *see also Selke v. Germanwings GmbH*, 261 F. Supp. 3d 666, 674 (E.D. Va. 2017); *Broadus v. Delta Air Lines, Inc.*, 101 F. Supp. 3d 554, 560–61 (M.D.N.C. 2015). Accordingly, Plaintiff has met her burden as to the first prong.

> ### (b)  *Helidosa purposely availed itself of the privilege of conducting activities in Florida.*

"To support purposeful availment, the defendant must have had contacts with the forum that were [its] own choice and not random, isolated, or fortuitous." *SkyHop Techs.*, 58 F.4th at 1230 (quoting *Ford Motor*, 592 U.S. at 359) (internal quotation marks omitted). The defendant's contacts must demonstrate that it "deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Ford Motor*, 592 U.S. at 359 (citation, internal quotation marks, and alteration omitted).

Plaintiff has plainly established that Helidosa purposely availed itself of this forum, considering that: (1) its aircraft land on Florida soil three times each day;

---

[10]  The fact that the crash occurred in the Dominican Republic does not diminish this bond.

(2) it derives thirty percent of its revenue from Florida; and (3) its CEO testified that Florida is Helidosa's most important state. Based on these facts, Helidosa's argument that it did not reasonably expect to be hauled into court in Florida is unavailing. *See* Doc. 55 at 33-35.

> *(c)    Helidosa has not made a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.*

The burden now shifts to Helidosa, which must make a compelling case that the exercise of jurisdiction is improper. *See SkyHop Techs.*, 58 F.4th at 1231. Courts "ordinarily consider four factors to resolve this inquiry: the burden on the defendant; the forum's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief; and the judicial system's interest in resolving the dispute." *Id.* (citation and internal quotation marks omitted).

Simply put, Helidosa has failed to show that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice. Any inconvenience Helidosa might face due to litigating here is outweighed by: (1) Florida's interest in adjudicating this dispute, which relates to the deaths of Florida residents; (2) Plaintiff's interest in obtaining expeditious, convenient, and effective relief; and (3) the judicial system's interest in efficiency.

For the reasons set forth above, Helidosa's Rule 12(b)(2) Motion is due to be denied because the Court has specific personal jurisdiction over this case.

### III.   *Forum Non Conveniens*

#### A.      Background

Helidosa also moves to dismiss this action under the doctrine of *forum non conveniens*. *See* Doc. 55 at 36-49. Helidosa argues that a Florida trial would be inconvenient because: (1) Helidosa is an Dominican company; (2) the underlying accident and "all of the alleged wrongful acts of Helidosa" occurred in the Dominican Republic; (3) the accident was investigated by the Comision Investigadora de Accidentes de Aviacion (the aviation accident investigation authority of the Dominican Republic); (4) "virtually all witnesses, documentation, materials, and evidence related to liability, including the aircraft wreckage" are located in the Dominican Republic; and (5) the aircraft at issue was "registered, inspected, and maintained" in the Dominican Republic. *Id.* at 37.

On the other hand, Plaintiff argues that the Dominican Republic is not an available alternative forum, that her choice of forum is entitled to substantial deference, and that there is, in fact, very little relevant evidence in the Dominican Republic. *See* Doc. 73 at 27-45.

#### B.      Legal Standard

Under the common law doctrine of *forum non conveniens*, the court "may decline to exercise its jurisdiction when a foreign forum is better suited to adjudicate the dispute." *Fresh Results, LLC v. ASF Holland, B.V.*, 921 F.3d 1043, 1048 (11th Cir.

2019). Because this power "effectively deprives the plaintiff of [her] favored forum," it should not be exercised lightly. *Kolawole v. Sellers*, 863 F.3d 1361, 1369 (11th Cir. 2017). Consequently, the defendant "bears the burden of justifying dismissal." *Fresh Results*, 921 F.3d at 1048. "To satisfy this burden, the defendant must establish that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate [her] suit in the alternative forum without undue inconvenience or prejudice." *Id.* at 1048–49 (citation and internal quotation marks omitted).

### C.   Analysis

As a "threshold matter, a court should not dismiss an action for *forum non conveniens* unless there is an adequate and available alternative forum." *Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1338 (11th Cir. 2020). Because Plaintiff concedes that Dominican Republic is an "adequate" alternative forum, the Court need only consider whether it is "available." *See* Doc. 73 at 29.

"An alternative forum is 'available' to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be transferred." *Leon*, 251 F.3d at 1311. "Ordinarily, the requirement of an available forum will be satisfied when the defendant is amenable to process in the other jurisdiction." *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1330 (11th Cir. 2011) (quoting *Piper Aircraft Co. v. Reyno*, 545 U.S. 235, 254 n.22 (1981)) (cleaned up).

In its Motion, Helidosa argues that the Dominican Republic is an available forum because it agrees to: (1) accept service in the Dominican Republic; (2) consent to jurisdiction in the Dominican Republic; and (3) waive any timeliness defense if Plaintiff re-files this action within six months of its dismissal. *See* Doc. 55 at 39-40. Relying on "DR attorney and law expert" Lucas Guzmán's ("Mr. Guzmán") declaration, Helidosa asserts that Dominican Republic "courts have jurisdiction over Plaintiff's claim" and that the "two-year limitations period" set forth in Article 35 of the Montreal Convention will not preclude an action in the Dominican Republic, "as Plaintiff already timely commenced her cause of action." *Id.* (citing Doc. 55-2, ¶¶ 9, 32-33, 37-44).

Plaintiff contends, however, that a Dominican Republic court may refuse to exercise jurisdiction over her claim pursuant to a French Supreme Court decision and that Article 35 will indeed bar it. *See* Doc. 73 at 28-32. To support her arguments, Plaintiff submits a declaration authored by Professor Keith S. Rosenn ("Prof. Rosenn"), who specializes in Latin American and Comparative Law. *See* Doc. 73-15.

In its Reply, Helidosa refutes Plaintiff's argument regarding French precedent—but not Article 35.[11]  Doc. 77 at 9-10.

---

[11] By abandoning this argument in its Reply, Helidosa implicitly concedes that Article 35 impacts the Dominican Republic's availability.

Article 35(1) of the Montreal Convention states: "The right to damages shall be extinguished if an action is not brought within a period of two years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the carriage stopped." *See* Convention for Int'l Carriage by Air art. 35(1), May 28, 1999, T.I.A.S. No. 13038. In the United States, there appears to be an open question of treaty interpretation regarding whether, in light of this action, Article 35's two-year limitations period would be satisfied if Plaintiff re-filed her claim in the Dominican Republic. [12] But, Helidosa has failed to sufficiently brief this complex issue in its Motion and Reply. *See* Docs. 55, 77.

Ultimately, however, that question would be for a Dominican Republic court to decide. Therefore, the Court looks to Mr. Guzmán and Prof. Rosenn's declarations for guidance. Although Mr. Guzmán acknowledges that the two-year limitations period set forth in Article 35 applies to Plaintiff's claim, his analysis hinges on various Dominican Republic Civil Code provisions, which appear to have

---

[12] *Compare von Schoenebeck v. Koninklijke Luchtvaart Maatschappij N.V.*, 659 F. App'x 392, 393–94 (9th Cir. 2016) ("[T]he Montreal Convention clearly bars '*any* action for damages' brought after the 'period of two years[.]'") *with In re Air Crash Off Long Island, N.Y., on July 17, 1996*, 65 F. Supp. 2d 207, 215 (S.D.N.Y. 1999) (concluding that France was an adequate and available alternative forum, in part because plaintiffs satisfied a substantively identical provision in the Montreal Convention's predecessor "by timely filing their claims in the United States").

no relation to treaty limitations periods. *See* Doc. 55-2, ¶¶ 37, 41-44. Alternatively,

Prof. Rosenn states:

> In the Dominican Republic there is not any known or recognized tolling of a prescription period found within a treaty, and as many jurisdictions have found, such prescription periods are often seen as jurisdictional, and they cannot be waived or tolled. The Dominican Republic is likely to apply the same rule.

Doc. 73-15, ¶¶ 21-22. Considering that Plaintiff's sole claim is brought under the

Montreal Convention, the Court credits Prof. Rosenn's unrebutted testimony. *See*

*supra* n.11.

As set forth above, Helidosa bears the burden of justifying dismissal, which

includes establishing that an alternative forum is available. Because Helidosa has

failed to demonstrate that Article 35 of the Montreal Convention would not bar

Plaintiff's claim if she re-filed it in the Dominican Republic, its Motion to Dismiss

for *Forum Non Conveniens* is doomed.[13]

---

[13] Based on this conclusion, the Court need not reach Plaintiff's argument regarding French precedent, nor weigh the public and private interest factors.

Nevertheless, the Court notes that the public and private interest factors weigh in Plaintiff's favor. *See Otto Candies*, 963 F.3d at 1338 (summarizing the relevant interests). The parties seem to largely agree on the cause of the crash; therefore, it is unlikely that they will need to produce a substantial amount of liability-related evidence from the Dominican Republic. *See supra* Section I.A (citing Doc. 73-16 at 19-31, 65-67, 72-76, 122-124). Additionally, Florida has a significant interest in this dispute because it involves the deaths of Florida residents, trial will not impose a significant administrative burden on this Court, and this case will generally involve interpreting the Montreal Convention—not applying foreign law.

Simply put, Helidosa has neither presented "positive evidence of unusually extreme circumstances" nor "thoroughly convinced" the Court that "material injustice is manifest"; thus, the Court lacks discretion "to deny a United States citizen access to the courts of this country." *SME*

## IV.    Conclusion

In short, the Court has specific personal jurisdiction over this case and refuses to dismiss it pursuant to the doctrine of *forum non conveniens.*

Accordingly, it is hereby **ORDERED** that Helidosa's Motion to Dismiss Plaintiff's Amended Complaint for Lack of Personal Jurisdiction or, Alternatively, *Forum Non Conveniens* (Doc. 55) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 29, 2025.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

*Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101–02 (11th Cir. 2004) (citation and internal quotation marks omitted) (collecting cases).